ORAMEL S. HOUGH

*v.*

COOK COUNTY LAND COMPANY.

73   23
71a 480

73   23
75a  49,

73   23
78a 443

73     23
92a  ¹180

73     23
96a  ³391

1. CORPORATION—*power of, to hold real estate.* Where a corporation, created by the laws of this State, is authorized by its charter to purchase, receive conveyances for, and hold titles to land, but is prohibited from so purchasing and holding for other than a prescribed purpose, a deed executed to it by one having capacity to make a conveyance will vest the title in such corporation, and the question as to whether the corporation has exceeded its power in making the purchase, is one between the corporation and the State, with which the grantor has no concern.

2. SAME—*purchasing land in excess of its authority.* The grantor in a deed to a corporation having power to purchase real estate, but which, by its charter, is prohibited from making purchases for other than a prescribed purpose, can not have the conveyance set aside and his contract rescinded, on the ground that the corporation, in taking the conveyance, did so for a purpose other than that prescribed, and had exceeded its power.

3. SAME—*validity of title to land held.* Where a corporation is authorized to receive conveyances of and hold title to real estate, but is prohibited from doing so for any but specified purposes, the question as to the validity of title to real estate conveyed to it can not be made to depend upon proof as to whether the land is held for such specific purpose or not. The title will vest in the corporation, and the question as to whether the corporation has exceeded its power, may be raised only by the State or by a stockholder.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Messrs. TRUMBULL, CHURCH & TRUMBULL, for the appellant.

Mr. GEORGE W. SMITH, and Mr. CHARLES A. GREGORY, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

.This was a bill in equity, filed by the appellant against the appellee, in the court below, to set aside a conveyance of cer-

tain lands, to cancel the stock of appellee, issued to him in payment for the same, and to restrain appellee, in the meantime, from selling such stock, which had been pledged to it as collateral security for a loan made to appellant.

A demurrer was interposed to the bill, which the court below sustained, and dismissed the bill.

So far as the allegations of the bill are material to the questions requiring our consideration, they are as follows: Appellee claimed to be a corporation under the laws of this State, with power to borrow and lend money; to take lands and mortgages as security; to purchase lands and make improvements thereon by erecting buildings for the purpose of renting the same; to hold buildings and lots for the purpose of improving and renting the same, and to do a general loan business, and take lands, mortgages and notes to secure the loans. Appellant, believing that appellee was possessed of the powers it claimed, and that it was authorized by its charter to buy land and issue its stock in payment therefor, and to loan money, etc., on the 24th day of May, 1873, contracted with it to sell and convey to it certain lands in Cook county, which are particularly described in the bill, in consideration that appellee would issue to him 365 shares of its stock, and would also loan him 80 per cent in money of the stock, and hold the stock as collateral security on the loan—the loan to be for one year from that date, with interest at 10 per cent per annum till due, and 12 per cent per month after maturity, with power, on failure to pay, to sell, etc. The land was conveyed, the money loaned, and the stock issued, and pledged as collateral security, in conformity with the terms of the agreement.

Since the transaction occurred, appellant has been advised by counsel that appellee had no authority to take the land and issue the stock; that it professes to act under authority of "An act to incorporate the Land Improvement and Irrigation Company," approved March 1, 1867, and the change of name to the Cook County Land Company, by vote of its stockholders, on the 20th of July, 1872, at which time its capital stock was

increased, in accordance with an act of the legislature in regard to changing names and increasing stock of corporations, approved March 26, 1872; that the change of name and increase of stock was unauthorized and void, and all the authority appellee had by its charter was to purchase lands for the purpose of irrigation and improvement, for the raising of crops thereon, and the sale and disposal thereof, when so improved.

It is alleged that the power vested in appellee by its charter, which is made part of the bill, as an exhibit, was to examine, survey and purchase lands and interests therein, watercourses or interests therein, for the purpose of irrigating the lands that might be so purchased, and facilitating crops in dry seasons, and to improve and cultivate such crops chiefly as require irrigation to produce the largest returns, and that appellee had no power to purchase and hold lands for any other purpose; that appellee has not purchased any lands for the purpose of irrigation, or for any object contemplated by its charter, but that appellee has purchased a large quantity of land, worth above $600,000, holds improved and unimproved city real estate, announces its intention to erect buildings on part of its vacant city property, and that it has been, since its organization, and now is, engaged in purchasing lands, city lots, the improvement of said lots for the purpose of sale and rental, and in the purchase of tax certificates, and in loaning money on bonds and mortgages, etc.

Appellant insists that the purchase of the land and the loaning of the money and taking notes therefor, were contrary to positive statutes, and therefore void.

The act of March 1, 1867, under which appellee first became incorporated, by its first section, empowers "The Land Improvement and Irrigation Company to have, hold, possess and enjoy, by themselves, successors and assigns forever, lands, tenements, hereditaments, goods, chattels, choses in action, and effects of every kind, and the same to grant, sell, alien, invest, loan and dispose of;" and the fourth section of that act is as follows:

"The chief objects of this association shall be to examine, survey and purchase lands or interests in lands, watercourses or interests therein, which are as near as may be adapted by nature to the use of water to irrigate the same, to facilitate the growth of crops in dry seasons, and to improve and cultivate the same for such crops chiefly as require irrigation to produce the largest returns." Private Laws of 1867, Vol. 2, p. 241.

Section 21 of the general incorporation law, approved March 26, 1872, under which appellee changed its name and increased its capital, contains this proviso: "And provided further, that any corporation other than corporations for manufacturing purposes, availing itself of or accepting the benefits of, or formed under this act (except the mere change of name), shall be subject to the general laws of this State now in force, or which may hereafter be passed, regulating corporations of like character." 2 Gross, 59.

One of the general laws then and still in force regulating corporations, provides that "no foreign or domestic corporation established or maintained in any way for the pecuniary profit of its stockholders, shall purchase or hold real estate in this State," except as provided for in that act. 2 Gross, 106, sec. 36.

Section 10 of that act authorizes corporations to "own, possess and enjoy so much real and personal estate as shall be necessary for the transaction of their business," and "to sell and dispose of the same when not required for the uses of the corporation;" and it contains a proviso that "all real estate so acquired in satisfaction of any liability or indebtedness, unless the same may be necessary and suitable for the business of such corporation, shall be offered at public auction, at least once every year," etc.

In case any corporation shall fail to sell such lands, it is made the duty of the State's Attorney of the proper county to proceed against the corporation, by information, to the end that such lands shall be decreed to be sold. 2 Gross, 103.

And the first section authorizes corporations to be formed in the manner by the act provided, for any lawful purpose except banking, insurance, real estate, brokerage, the operation of railroads, and the business of loaning money. Conceding that, in determining appellee's powers, these several provisions must be construed together, and that appellant's construction, that appellee has authority only to examine, survey and purchase lands or interests in lands, watercourses or interests therein, which are as near as may be adapted by nature to the use of water to irrigate the same, etc., is correct, does it follow that the title to lands conveyed to and held by it for other and different purposes is absolutely void, and may be so declared at the instance of the grantor seeking, for that cause alone, to repossess himself of the property?

The authorities cited in the brief for appellant—*Bank U. S.* v. *Owens*, 2 Peters, 538–9, *Munsell* v. *Temple*, 3 Gilm. 93, *Cin. Mut. etc.* v. *Rosenthal*, 55 Ill. 91, *Green* v. *Seymour*, 3 Sandf. Ch. 292, *Smith* v. *Bromley*, Douglas, 696, and *Browning* v. *Morris*, Cowp. 790—recognize the general doctrine that a contract prohibited by statute or against the manifest policy of the law, is void; and in *Carroll* v. *East St. Louis*, 67 Ill. 568, also cited by appellant, the question before us was, whether a corporation, created in another State for the sole purpose of buying and selling lands, has power to purchase and hold title to lands in this State, and we held that it has not, because it would tend to create perpetuities, and is against the general policy of our legislation.

In a more recent case, *Starkweather* v. *The American Bible Society*, 72 Ill. 50, the same doctrine was reasserted.

There seems to us, however, to be this important distinction between the principle recognized in these authorities and that applicable here. There, by reason of the express or implied prohibition of the law, the party is absolutely denied the power to acquire any rights through the particular contract. Here, there is power to purchase, receive conveyances and hold title to lands, but it is prohibited that they shall be purchased and

held for other than a prescribed purpose. In the one case, the principle affects the power of acquisition; in the other, it affects simply the use to which the acquisition shall be applied.

There can be no question of the right of a stockholder to the aid of a court of equity against a corporation, to prevent it from misapplying its capital, or from doing acts which would amount to a violation of its charter; but the frame and prayer of the bill in the present case do not contemplate such relief, and we do not conceive it could be granted without material amendment, to make which, leave should have been asked in the court below.

But appellee being authorized to purchase and hold lands, and appellant having sufficient capacity to convey, the title was obviously vested in appellee by the delivery of the deed, and the question whether appellee has, by its purchase and use of lands, exceeded the powers conferred by its charter, is one between the State and appellee, with which appellant, as a grantor simply, has no concern. *Banks* v. *Poiteaux,* 3 Randolph, 141; *Barrow* v. *N. and C. T. Co.* 9 Humphreys, 304; *Chambers* v. *St. Louis,* 29 Mo. 576; *Attorney General* v. *Tudor Ice Co.* 104 Mass. 239; *Whitman Mining Co.* v. *Baker,* 3 Nevada, 391; *Hayward* v. *Davidson,* 41 Ind. 212; Angell & Ames on Corp. secs. 152–3; Dillon on Munic. Corps. sec. 444; *Natoma W. and M. Co.* v. *Clarkin,* 14 Cal. 544.

It is well observed by Field, J., in the case last above referred to, at p. 552: "It would lead to infinite embarrassments if, in suits by corporations to recover the possession of their property, inquiries were permitted as to the necessity of such property for the purposes of their incorporation, and the title made to rest upon the existence of that necessity." And this can not be better illustrated than by reference to the fourth section of appellee's charter, before quoted. Precisely where would the line be drawn between those lands which are, in the language there employed, "as near as may be adapted by nature to the use of water to irrigate the same," and those

which are not? If it were competent to inquire whether the land conveyed is such as is contemplated by the charter, this would have to be determined, and in every conveyance it would be material in determining whether title vested, or the deed was a nullity.

Our conclusion is, assuming appellant's construction of the several statutes affecting appellee's corporate powers, to be correct, (upon which we express no opinion,) appellant may, as a stockholder, on a bill filed for that purpose, have relief in equity to restrain appellee from acting in excess or in violation of its corporate powers; and he may also, as a citizen of the State, cause steps to be taken in its name, for the same cause, to have judgment of forfeiture of its franchise; but he can not, as a grantor of lands, urge such acts as a cause for decreeing his deed void, and a rescission of his contract.

Treated as a bill to rescind the contract on the ground of fraud, independently of the questions we have considered, the allegations are insufficient.

The decree is affirmed.

*Decree affirmed.*

Mr. CHIEF JUSTICE WALKER: I am in favor of affirming, unless complainant should be required to refund the money he received from the company. I hold that the company exceeded their power in purchasing these lands, and that the company should be held to have taken no title by the purchase.