ELIJAH S. ALEXANDER

v.

THE TOLLESTON CLUB OF CHICAGO.

*Filed at Ottawa May 19, 1884.*

1.  CORPORATION—*right to acquire and hold title to real estate—limit of the right.* By section 31, of chapter 32, of the Revised Statutes of 1874, corporations, associations and societies, not for pecuniary profit, formed under that act, are made capable, in their corporate names, of taking, purchasing, holding and disposing of real and personal property, for the purposes of their organization.

2.  SAME—*who may object that a corporation is holding real estate in excess of its right.* Where a corporation, by the law of its creation, is authorized in some cases, or for some purposes, or to a certain extent, to take and hold the title to real estate, it can not be made a question by any party, except the State, whether its real estate has been acquired for the authorized uses or not, or is in excess of the capacity of the corporation to take and hold. The State alone must assert her policy in that regard.

3.  So the right of an association, assuming it to be a corporation under a law authorizing the creation of corporations of the class to which it claims to belong, and which has exercised powers as a corporation, to hold property, can not be questioned by an individual citizen in a suit to set aside a contract he has made with the association in its corporate name and character.

4.  CHANCERY—*jurisdiction—injunction as to right in another State.* A court of equity in this State has jurisdiction of a bill, the object of which is to obtain an injunction to prevent the defendant from interfering with a right of way claimed by the complainant over lands situate in another State, where the defendants are personally served. The jurisdiction in equity by way of injunction is strictly *in personam.*

5.  LEASE—*construed, as to period of duration—as affected by the mode of organization of the lessee corporation.* The owners of land leased to a club all their ground in a certain section, used for a canal and right of way, "for and during the existence of said club," with this clause: "Whenever said club shall cease to exist as now organized, this lease, etc., shall be determined and cease." On the day before the execution of this lease the club had passed a resolution to become incorporated, and the lessors were members of the club: *Held,* that the grant of the right of way, or canal and its appurtenances, did not cease upon the club becoming incorporated under the statute, assuming all the debts of the same and taking all its property; and that the words, "as now organized," referred to the purpose of organization,— not the mode of organization.

5—110 ILL.

6. SAME—*as to what passes by lease of a canal—the foot-way as an incident.* Where a hunting and fishing club constructed a canal across a tract of land, so as to connect its club-house with a river and its marsh grounds, through which to transfer boats, and which was used in connection with a foot-way along its side, over which the hunters walked, and the owners of the land, knowing the use made of the canal and foot-way, leased to the club all the ground then used for the canal, it was *held*, that the lease passed the foot-way, as an actual, constant incident to the use of the canal, especially when the lessors, by their subsequent acts, showed an acquiescence in the continued use of the foot-way in connection with the canal.

7. CONSTRUCTION OF CONTRACT—*acts of the parties.* The acts of parties under a contract which they have entered into, and their acquiescence in its provisions, which seem to evince their understanding of its meaning, and to be a construction of the contract by the parties themselves, are entitled to regard in considering what was their intention in the making of it.

8. GRANT—*as to an easement passing with the principal thing.* It is the rule that whenever a thing is granted, all and every easement necessary to its beneficial enjoyment will pass.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Messrs. WALKER & CARTER, for the appellant:

The burden is upon a corporation, and those claiming under it, to show that by its charter it is a body politic, authorized to take or convey lands. *Lumbard* v. *Aldrich,.* 8 N. H. 34; Angell & Ames on Corp. secs. 161, 162.

If appellee can not, under the laws of this State, take and hold lands for sporting or other amusements, it can not do so in any other State. In Indiana there is no statute authorizing a corporation of the character of appellee. It will not, therefore, be claimed that it is the policy of the State of Indiana to permit foreign corporations to do what its own citizens may not. As to our State policy in regard to corporations acquiring and holding real estate, see *Carroll* v. *City of East St. Louis*, 67 Ill. 568.

An easement for right of way is an interest in the land over which it is to be enjoyed. Washburn on Easements, 5;

*Ex parte Coburn*, 1 Cow. 568; *Dodge* v. *McClintock*, 47 N. H. 386; *Forbes* v. *Balsenseifer*, 74 Ill. 183; *Anderson* v. *Buchanan*, 8 Ind. 133; *Richter et al.* v. *Irwin*, 28 id. 26.

The Tolleston Club was a mere voluntary association, while the Tolleston Club of Chicago is an incorporation. For many and most purposes it is, in law, an artificial person of this State, entirely different in law and in fact from the Tolleston Club. The lease was not to the incorporation, but to the voluntary association, and that ceased when the association ceased to be as it was organized at the date of the lease. The court has no jurisdiction to grant the injunction. *Western Union Telegraph Co.* v. *P. and A. Telegraph Co.* 49 Ill. 92.

Messrs. JEWETT, NORTON & LARNED, for the appellee:

Corporations, etc., not for pecuniary profit, formed under chapter 32 of the Revised Statutes, are made capable, in their corporate names, of taking, holding, etc., real and personal estate for purposes of their organization. Rev. Stat. sec. 31, chap. 32.

An easement is a privilege. It is not a right to land, nor to any corporeal interest in land, and a grant of a right of way does not convey the soil over which the way passes. Goddard's Law of Easements, 4; *Cook County* v. *Chicago, Burlington and Quincy R. R. Co.* 35 Ill. 464; Washburn on Easements, 3, 5.

The right of a corporation to hold property can only be questioned by the State in a direct proceeding. *Hayward* v. *Davidson*, 41 Ind. 214; *Baker* v. *Neff*, 73 Ind. 68.

The lease, if made in view of the proposed incorporation of the club, or confirmed by acknowledgment after incorporation, is not avoided by the misnomer of the corporation. *Northwestern Distilling Co.* v. *Brant*, 69 Ill. 658; *Board of Education* v. *Greenebaum*, 39 id. 609; *Tallcott Mountain T. Co.* v. *Marshall*, 11 Conn. 186; *First Parish in Sutton* v. *Cole*, 3 Pick. 237; *Chadsey* v. *McCreery*, 27 Ill. 253; *Kentucky*

*Seminary* v. *Wallace,* 15 B. Mon. 35; *Burton* v. *American Tract Society,* 23 Vt. 336; Potter on Corporations, p. 17, sec. 12.

The canal could not be used in the manner and for the purposes contemplated by the lease without the use of the walk, and therefore this use must have passed by the lease, as an appurtenant to the canal. Angell on Watercourses, (6th ed.) secs. 158, 167, 358.

The acts of the parties to this lease clearly evinced their understanding that it included the necessary path on the bank, for such path was constantly used without question, and this construction of the lease by the parties themselves should be especially regarded. *Seavers* v. *Cleary,* 75 Ill. 349.

The courts of equity may decree the specific performance of contracts respecting land situated beyond their jurisdiction. Story's Eq. Jur. sec. 744.

The fact that property the subject matter of the controversy is located in a foreign country, does not prevent the court from exercising jurisdiction, when all the parties to the transaction are within its reach, and amenable to its process. High on Injunctions, 105; Kerr on Injunctions, 9; Wells on Jurisdiction, 80; 2 Spence's Equity, 6, 7; *White* v. *White,* 7 Gill & J. (Md.) 208; 1 Ves. Sr. 444; *Hawley* v. *James,* 7 Paige, (N. Y.) 213; *Guerant* v. *Fowler,* 1 Hen. & M. (Va.) 5; *Episcopal Church* v. *Wiley,* 2 Hill, (S. C. Ch.) 584; *McDowell* v. *Read,* 3 La. Ann. 391; *Miller* v. *Block,* 2 Jones, (N. C. Law,) 341; *Ward* v. *Lathrop,* 4 Texas, 180; *Butterworth* v. *Kinsey,* 14 id. 495; *Wood* v. *Warner,* 2 McCarter, (N. J. Eq.) 81; *Massey* v. *Watts,* 6 Cranch, 148; *Mitchell* v. *Bunch,* 2 Paige's Ch. 606; *Clasen* v. *Corley,* 5 Sandf. 461; *Burnley* v. *Stevenson,* 24 Ohio St. 474.

Mr. Chief Justice Sheldon delivered the opinion of the Court:

This was a bill filed by the Tolleston Club of Chicago, for an injunction against Elijah S. Alexander, to restrain him

from interfering with the complainant in the use of a certain canal and foot-path along its bank, in respect of which complainant claims a right of way.

The case, in its general outline, as made by the proofs, is, that during the spring of 1871 certain gentlemen of Chicago formed an association called the "Tolleston Club," the object of which was shooting and fishing in the Tolleston marshes. They purchased a tract of sixty acres of land in Lake county, in the State of Indiana, situate about one-half mile from the Little Calumet river, in said county, upon which were erected a club-house, and barn, outbuildings, and large boat-house, the buildings being of the value of some $10,000.    The fishing and hunting of the members of the club could only be prosecuted in the Little Calumet river and the marshes adjacent to the banks thereof, in front of the club-house.    About that time Alexander, with S. H. Turrill and James H. Foster, all being members of the club, purchased certain lands between the land of the club and the river and marsh.    In the fall of 1871 the club excavated a canal across this land of Alexander, Turrill and Foster, with their knowledge and consent, at a cost of $2500, it being for the purpose of passing boats from the river to the boat-house, the latter being at the upper end of the canal, about one hundred yards from the club-house.    The water being seldom of sufficient depth for the passage of boats, the members of the club were accustomed to tow or pole their boats from the marsh as far as the depth of the water would allow, and walk the rest of the distance, following a uniform path along the canal.    The path was used only for foot travel.    There was a plank walk, composed of two planks, and being about three feet wide, put down along this path, from the club-house to the marsh, in 1875.    On the 3d day of March, 1873, the members of the club, at a meeting thereof, resolved to incorporate under the general act of this State for forming corporations "not for pecuniary profit."    The license of the Tolleston Club of Chicago was

issued March 27, 1873, and at a meeting of the incorporators on June 6, 1873, the constitution and by-laws of the former club were adopted, its debts and liabilities assumed, and its property and effects received. Alexander, Turrill and Foster executed the following lease to the Tolleston Club:

"Whereas, E. S. Alexander, S. H. Turrill and James H. Foster are the owners in fee simple of section 18, in the town of Tolleston, Lake county, Indiana, and whereas the Tolleston Club has cut a small canal from the property owned by the said club near and adjacent to said property of Alexander, Turrill and Foster, over and through said section 18, to the Little Calumet river, which is to be used by the said club for the security of their boats, and other sporting purposes. Now, in consideration thereof, know all men by these presents, that we, the said E. S. Alexander, S. H. Turrill and J. H. Foster, parties of the first part, and the Tolleston Club, party of the second part,—

"Witnesseth: That the said parties of the first part do hereby lease to the said party of the second part, for and in consideration of the work done upon the said canal, and one dollar to the said parties of the first part in hand paid, all the ground in section 18 now used for said canal, for and during the existence of said club,—all the expense of making, repairing, keeping and protecting the said canal, now and at all times, to be paid by the said club, the said parties of the first part to be saved harmless from the same; and whenever said club shall cease to exist as now organized, this lease, and all the rights thereunder, shall be determined and cease, and the said parties of the first part shall resume possession without let or hindrance.

"Witness our hands and seals this fourth day of March, A. D. 1873.

E. S. ALEXANDER, [SEAL.]

S. H. TURRILL, [SEAL.]

JAMES H. FOSTER. [SEAL.]"

Foster and Turrill subsequently conveyed all their interest in the above mentioned land to Alexander,—Foster on June 26, 1874, and Turrill on March 25, 1876. The club, in 1881, purchased about one thousand acres more of these marsh lands on the river, for shooting grounds for its members, at a cost of some $20,000. The evidence is, that there are no means of access from the club-house grounds to this marsh and the river other than by way of this canal and foot-path, except by going several miles out of the way, and going by way of the river; that if this access to the river were cut off, it would very much depreciate in value the property of the club,—as some witnesses say, would destroy the club. The canal was of much benefit to the land of Alexander, draining some thirty acres of it. There was no interruption in the use of the walk or canal, or objection thereto, till in 1881. The circuit court decreed the relief prayed. The decree, on appeal to the Appellate Court for the First District, was affirmed, and the defendant appealed to this court.

Appellant's counsel contend that the decree can not be sustained, for the following reasons: First, the power to acquire and hold lands, easements or right of way is not delegated to or conferred upon the appellee by the statute of 1872, under which appellee is incorporated; second, such power is not delegated to any corporation by the statutes or laws of the State of Indiana, where the land is situated, and is contrary to its policy; third, there is no evidence in support of appellee's claim of easement or right of way in or upon appellant's lands; the Tolleston Club has no legal existence; by the terms of the lease, all its rights thereunder have ceased and are terminated; a parol license will not support an easement; fourth, the court below has no jurisdiction over the subject matter of the action.

The statute of 1872 referred to, in section 31, of chapter 32, of the Revised Statutes of 1874, provides that "corporations, associations and societies, not for pecuniary profit,

formed under this act, shall be bodies corporate and politic, by the name stated in such certificate, * * * may have power to make and enforce contracts in relation to the legitimate business of their corporation, society or association, * * * and they and their successors, by their corporate name, shall, in law, be capable of taking, purchasing, holding and disposing of real and personal estate for purposes of their organization," etc. There is certainly given here the capacity to hold real estate. The titles to the club-house property and the marsh property are not in issue in this case. What is here in controversy is but the question of a right of way across intervening lands. Even if appellee has exceeded in extent its power of holding real estate, appellant, we conceive, can not take advantage of the fact. In *Hayward* v. *Davidson*, 41 Ind. 214, the rule is acknowledged to be, in such cases where a corporation is authorized by its charter or the law of its creation, in some cases, to take and hold the title to real estate, that "as the corporation may, for some purposes, acquire and hold the title to real estate, it can not be made a question by any party, except the State, whether the real estate has been acquired for the authorized uses or not," and quotes the language of Judge DILLON upon the subject, in his work on Municipal Corporations, sec. 444: "If there is capacity to purchase, the deed to the corporation divests the estate of the grantor, and there is a completed sale; and whether the corporation in purchasing exceeds its power, is a question between it and the State, and does not concern the vendor." And in *Baker* v. *Neff*, 73 Ind. 68, where a party, having conveyed land to a supposed corporation by its corporate name, sought to set aside the conveyance, the court say: "The right of an association, assuming it to be a corporation under a law authorizing the creation of corporations of the class to which it claims to belong, and which has exercised powers as a corporation, to hold property, can not be questioned in an action brought by an individual citi-

zen to set aside a contract which he had made with the association in its corporate name and character. The right of a corporation to hold property can only be questioned by a direct proceeding prosecuted in behalf of the State." (See *Hough* v. *Cook County Land Co.* 73 Ill. 23.) In *Darst* v. *Gale*, 83 Ill. 140, it was said: "The general rule is, that the plea of *ultra vires* shall not prevail when, instead of advancing justice, it would accomplish a wrong; and it makes no difference, in this respect, whether it is interposed for or against the corporation."

The inequitable character of the claim which is here set up to defeat this lease because of the alleged incapacity of appellee to take it, is, under the facts of this case, apparent. This objection, that the power to acquire and hold lands is not conferred by the statute of 1872, is not well taken. And we think the same must be said with respect to such power not being conferred by the laws of the State of Indiana, and as to its supposed policy. Whatever such may be, would seem, under the authorities above cited, to be a matter which appellant can not avail himself of in this suit,—that that is not a thing of individual concern, but that it is to be left with that State alone to assert for herself any laws or policy of her own upon the subject, as she may, or not, see fit to do.

As to appellee's claim of right of way not being supported by the evidence, it is insisted that the lease in evidence, which is relied on in support of such claim, became avoided by the subsequent incorporation of the club. As the club had taken actual steps to become incorporated before the lease was made, such a result as that contended for would be an extraordinary one. The club had passed a resolution to become incorporated on the 3d day of March, 1873, and the lease was executed on the next day, March 4th. It certainly could not have been the understanding of the club that their incorporation was to terminate the lease, nor of at least one of the lessors, Turrill, who was president of the club, and as

such signed the record of the meeting at which the resolution for incorporation was passed.   Such notion of the lease having become determined rests upon the words of the lease: "And whenever said club shall cease to exist *as now organized,* this lease and all the rights thereunder shall be determined and cease." The duration of the lease had before been fixed as "for and during the existence of said club," and the words quoted are, whenever said club shall "cease to exist," as now. organized.   It is the existence of the club which is made the measure of the life of the lease, and the words "as now organiz-.. ized," relate to the club's existence,—such a club as it then was, "as now organized,"—a club for its then purposes, and not a club of a different character.   We think the words "as now organized," refer to purpose of organization, not mode of organization,—to a shooting club, and not to the manner in which it should be organized,—whether as a voluntary association or body corporate.   It makes no manner of difference with any rights involved in this lease whether the club be a voluntary association or a corporation.   It in no way affects the use of the right of way or the burden upon the land, and it can not be supposed that the mere manner of being organized as a voluntary association, or as an incorporated body, was at all in the contemplation of the parties to the lease. It may be remarked of the resolution of March 3, to become incorporated, it begins:   "Resolved, that pursuant to the original design the members take immediate steps to incorporate," etc.   Some point is made upon the meeting at which it was resolved to become incorporated being attended by but a small portion of the members of the club, and it not appearing that all of the members of the club went into the incorporation.   We perceive nothing substantial in this. There is no pretense of the existence now of two separate bodies, or of any adverse claim of interest in any of the club property.   All of the members of the former club are made members of the incorporated club.   It has succeeded to all

of the old club,—its property and liabilities, constitution and by-laws. Its object is the same, and all the difference, as affecting anybody, is that its legal name is now the "Tolleston Club of Chicago," instead of the "Tolleston Club," and it has the privileges, as a corporation, which the statute gives to it. We can not adopt the literal reading, as insisted upon, of this language of the lease, and we do not find that the lease became determined upon the club's incorporation.

It is contended the lease gives no right to use the plank walk laid along the bank of the canal. This foot-path was ever in constant use by the members of the club, in connection with the use of the canal, from the time the canal was dug. The mode appears to have been for the hunter to have some one to paddle or push the boat, with his accoutrements in it, up and down the canal, and he would walk along upon the bank. A year or two after the canal was dug, from the taking away of a dam upon the river, the water in the canal became lowered, and to such an extent as to cause a disuse of the canal, in a great measure, but it can not be said to have been abandoned. It rarely was used through its entire length or greater part, but a portion of it next the river could always be and was used for the boats. This disuse of the canal increased more and more the use of the foot-path. Boats would land at various points along the bank, according as the depth of water admitted of the passage of boats, and the members of the club would walk the rest of the distance along the bank. The canal and this foot-path were the only practicable means of access from the river and marsh to the club-house back of them. Wherever there is the right of navigation there is the incidental right to use the banks of the stream, to a greater or less extent, as the purposes of navigation may require. The lease is, in terms, "all the ground in section 18 now used for said canal." We think this may not unreasonably be held as including all the ground then used, together with the canal, or in connection

with the canal. This foot-path, we may infer from the evidence, was as much used in connection with the use of the canal as the canal itself was used. It had ever been so used before, and was so used at the time of·the making of the lease, and has been ever since, until in 1881, with certainly the knowledge and consent, and without objection, of the lessors.

It is the rule that whenever a thing is granted, all and every easements necessary to its beneficial enjoyment will pass. (Angell on Watercourses, secs. 158, 358.) Although this foot-path was not absolutely necessary for the use of this canal, as is the tow-path in the case of an ordinary canal where the mode of propelling boats is by animal power, still its use was an actual, constant incident of the canal's use,—such a convenience therein, and accessory, and so far necessary, that its use may, not improperly, we think, be regarded as appurtenant to the canal, and passing by the lease thereof. There are acts of the lessors which have a bearing in this particular. It is in evidence that in 1871 or 1872, when Mr. Turrill was the owner of one-third of the land as tenant in common, and also president of the club, with his concurrence and 'assistance, and for the purpose of defining the right of way as stated by him, there was built a fence, some twenty or twenty-five feet from the edge of the canal, for a distance of sixty or eighty rods, and a plank walk was laid down for this foot-path, along the inside of the fence. About 1878 appellant wished to have the location of the plank walk changed, and upon seeing the president of the club on the subject, he directed the latter to confer with appellant's tenant as to the location of the walk, which the president did, and the walk was moved near to the canal,—as near as could be with safety,—and placed to the satisfaction of the tenant, where it afterward remained without objection. These acts of the parties, and their acquiescence in the use of the walk, would seem to evince their understanding that the lease included

this path on the bank, and to be a construction of the lease by the parties themselves, which is entitled to regard in considering what was their intention in the making of the lease. *Leavers* v. *Cleary*, 75 Ill. 349.

The further objection made is, that the circuit court had no jurisdiction over the subject matter of the action because the land was in another State. Appellant resided within the jurisdiction of the court, and was personally served with process. The object of the bill was to obtain an injunction to prevent appellant from interfering with a right of way claimed by complainant over lands situated in the State of Indiana, under a lease, the controversy involving the construction of the lease. ( The jurisdiction of equity by way of injunction is strictly *in personam.* ( It is well settled that courts of equity may decree the specific performance of contracts respecting land situated beyond the jurisdiction of the State where the suit is brought. The ground of this jurisdiction, as said by Story, is, that courts of equity have authority to act upon the person; and although they can not bind the land itself by their decree, yet they can bind the conscience of the party in regard to the land, and compel him to perform his agreement according to conscience and good faith. (2 Story's Eq. Jur. sec. 743.) And in the section following he thus states the rule: "The proposition may, therefore, be laid down in the most general form, that to entitle a court of equity to maintain a bill for specific performance of a contract respecting land, it is not necessary that the land should be situated within the jurisdiction of the State or county where the suit is brought. It is sufficient that the parties to be affected and bound by the decree are resident within the State or county where the suit is brought, for in all suits in equity the primary decree is *in personam*, and not *in rem.*" And in *Massie* v. *Watts*, 6 Cranch, 148, Chief Justice MARSHALL delivering the opinion of the court, it is laid down, "that in a case of fraud, of trust, or of contract, the jurisdiction of a court

of chancery is sustainable wherever the person ·be found, although lands not within the jurisdiction of that court may be affected by the decree." · In cases of injunction, it is 'laid down as a general rule that "the court may. exercise jurisdiction independently of the locality of the act to be done, provided the person against whom relief is sought is within the reach and amenable to the process of the court." (Kerr on Injunctions, 9.) And in treating of the subject of the jurisdiction of courts of equity to restrain proceedings in the courts of a foreign country, it is laid down in High on Injunctions, sec. 59: "The fact that the property which is the subject matter of the controversy is located in a foreign country will not prevent the court from exercising jurisdiction, where all the parties to the transaction are within its jurisdiction, and amenable to its process."

We are of opinion that the circuit court had jurisdiction of the subject matter of the suit. The judgment of the Appellate Court will be affirmed.

· *Judgment affirmed.*

Mr.. JUSTICE WALKER: I neither concur in the reasoning nor conclusion of the majority of the court in this case. .