# John E. Lauder v. Peoria Agricultural and Trotting Society.

1. CORPORATIONS—*Extent of Power to Purchase Land.*—The statute implies that a corporation which requires a tract of land for its legitimate purposes may in good faith buy a tract larger than subsequent events shall prove was needed, and in such case the transaction will not be *ultra vires*, nor the corporation precluded from selling the surplus.

2. SAME—*Ultra Vires—Estoppel.*—A person who has received the benefits of a full performance, by a corporation, of a contract between himself and the corporation, will not be heard to object that the contract and performance were not within the legitimate powers of the corporation.

3. SAME—*The State Alone Can Object that a Corporation is Holding Land Unlawfully.*—No one except the State can be heard to say that a corporation, which has power to hold real estate, has exceeded its powers by acquiring real estate beyond its need or for other than corporate purposes.

4. CONTRACTS—*Date of, Not Conclusive as to Time of Execution.*—It may be assumed that an instrument was executed, delivered and became

binding, if at all, on the day of its date, where nothing to the contrary appears, but the date is not conclusive upon the subject.

5. SAME—*An Instrument Held to be a Proposal and Binding After Acceptance.*—A person signed an instrument in which he agreed, on certain conditions, to purchase certain land of a corporation not in existence at the time the instrument was signed. *Held*, that the agreement was in the nature of a proposition to the corporation, and became binding upon the corporation accepting it, and either signing it or performing the contract on its part.

6. REAL ESTATE—*A Description Held Sufficient.*—A contract of sale of real estate was as follows: "The undersigned hereby agrees to purchase * * * one lot in a subdivision to be made of a part of the northeast quarter of section twenty-eight (28), township nine (9) north, range eight (8), east of the fourth principal meridian, to be known as the Fair Ground subdivision, as shown on a plat thereof in the custody of John B. Samuels, trustee, and lying east of the fair ground and race track hereinafter referred to. Said lot * * * to be designated by a majority of the persons comprising the citizens' committee on fair ground, with mile race track. Dated at Peoria, Illinois. * * * " *Held*, that the contract was not void for want of a sufficient description of the property.

7. LOTTERIES—*A Transaction Held Not to be a Lottery.*—A contract of sale of a lot in a certain tract, provided that the lot should "be designated by a majority of the persons comprising the citizens' committee on fair ground with mile race track." In a suit for the purchase price of the lot it was shown that all the lots in the tract were of substantially equal value. *Held*, that the transaction was not shown to be a lottery.

8. APPELLATE COURT PRACTICE—*Errors Not Argued are Waived.*—While the record in this case appears to contain errors, such apparent errors were not argued and must be considered waived.

Assumpsit, for the purchase price of a lot. Appeal from the County Court of Peoria County; the Hon. ROBERT H. LOVETT, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed September 20, 1897.

ARTHUR KEITHLEY, attorney for appellant.

IRWIN & SLEMMONS, attorneys for appellee.

MR. JUSTICE DIBELL DELIVERED THE OPINION OF THE COURT.

This was an action of assumpsit brought by appellee against appellant to recover the price he agreed in writing to pay for a lot of land. A jury was waived. It was agreed the declaration and plea were sufficient to admit any proof

offered by either party.   The evidence consisted of a writ-
ten contract and various stipulations entered into at the
trial.   There was finding and judgment for appellee in the
sum of $272.51, from which appellant prosecutes this appeal.
  The contract sued upon was dated March 23, 1895, and
signed by appellant, and the body thereof was as follows :
" The undersigned, John E. Lauder, hereby agrees to pur-
chase from the Peoria Agricultural and Trotting Society,
and said society hereby agrees to sell him, one lot in a sub-
division to be made of a part of the northeast quarter of
section twenty-eight (28), township nine (9) north, range
eight (8), east of the fourth principal meridian, to be known
as the Fair Ground subdivision, as shown on a plat thereof
in the custody of John B. Samuels, trustee, and lying east
of the fair ground and race track hereinafter referred to,
at two hundred and fifty dollars per lot, payable one hun-
dred dollars in cash to John B. Samuels, trustee, on deliv-
ery of a warranty deed, conveying in fee simple, a good
title, free of all incumbrances, and the balance in monthly
payments of twenty-five dollars each, with interest at six
per cent per annum, evidenced by six promissory notes,
payable to John B. Samuels, as trustee for said society, or
order, and to be secured by mortgage on said lot or lots.
Said lot or lots to be designated by a majority of the per-
sons comprising the citizens' committee on fair grounds
with mile race track, whenever a sufficient number of lots
in said subdivision have been sold to warrant said society
in locating a fair ground with mile race track, on what is
known as the Allaire farm and necessary adjacent land.
And should said society fail or refuse to locate and construct
said fair ground and mile race track, this agreement to be
null and void."   When it was offered in evidence appellant
admitted its execution, but objected to its competency as
evidence on the following grounds: 1st. That the con-
tract was *ultra vires*.   2d. That there was no such cor-
poration as plaintiff in existence at the date of the contract.
3d. That the contract is void for the want of a sufficient
description of the property sold.   4th. That the transac

tion was a lottery, and therefore void. These objections were overruled, and they present the questions argued upon this record. It was stipulated appellee was an Illinois corporation, having its principal office at Peoria; that its certificate of organization was dated April 24, 1895, and was filed for record May 20, 1895, in the recorder's office of Peoria county; that its corporate object as stated in said certificate was to construct and maintain a race track; to hold race meetings; to develop speed of persons on bicycles; to improve and develop agricultural, horticultural and mechanical arts, and hold exhibitions thereof, etc. It was also stipulated that appellee did and performed all matters and things upon its part to be done and performed, in the manner and as required by said contract; that the several lots of the subdivision mentioned in said contract were all of substantially equal value, and that said lot was designated and allotted to appellant in writing.

We are unable to say that the foregoing evidence shows this contract was beyond the powers of the corporation. The purposes of the corporation required it to have real estate. This suit was brought August 1, 1896, long after the organization of appellee. Section 1 of the act under which it is organized, forbids corporations to be formed thereunder for the purpose of real estate brokerage, but section 5 of said act authorizes appellee to own so much real estate as may be necessary for the transaction of its business, and to sell and dispose of the same when not required for its uses. The evidence does not disclose what lands were necessary for appellee's corporate purposes, nor what lands it bought, nor whether the lot in question ceased to be required for its corporate purposes. The statute implies a corporation which requires a tract of land for its legitimate purposes, may in good faith buy a tract larger than subsequent events shall prove was needed, and in such case the transaction would not be *ultra vires*, nor the corporation precluded from selling the surplus. Counsel have stated in their briefs supposed facts concerning the purchase and use of this land which we do not find in the

evidence.   The contract required appellee to deliver appel-
lant a warranty deed of the lot designated.   The stipulation
admits a lot was designated for appellant, and that the cor-
poration delivered a warranty deed of said lot to appellant.
This means more than a mere tender of a deed.   Delivery
is defined in Bouvier as "transmitting the possession of
a thing from one person into the power or possession of
another."   This stipulation we therefore construe to mean
that before this suit was brought the corporation acquired
title to this lot and caused it to be set apart to appellant in
the manner provided by the contract; that the corporation
executed a warranty deed conveying said lot to appellant
in fee, and offered it to appellant; and that he received it
into his possession.   By this act the contract became com-
pletely executed by the corporation, and appellant had
received the full benefit thereof, and we are of opinion he
could not thereafter plead *ultra vires* to avoid paying for
what he had received.   The law governing the rights of the
parties in such case is thus well stated in 27 American and
English Encyclopedia of Law, 363, under the title "*ultra
vires :*"   "The distinction taken between *ultra vires* con-
tracts purely executory and those fully executed on one
side, is founded in reason.   When the contract has been
fully performed by one of the parties, the infraction of the
law has already taken place, which eliminates all questions
of public policy from the case, and allows the courts to deal
with the contract on equitable principles.   Furthermore,
the only justification for the plea of *ultra vires* by an indi-
vidual sued upon a contract with a corporation is that the
obligation is not mutual, as the other party, the corporation,
would not be bound by it.   But when the contract has been
fully performed by the corporation, the mutuality of the
obligation becomes an immaterial question, for the reason
that the other party can have no occasion to seek its enforce-
ment.   According to the weight of authority, a corporation
may not avail itself of the defense of *ultra vires* when the
contract has been in good faith fully performed by the
other party, and it has had the full benefit of the perform-

ance of the contract; and, conversely, if the other party has had the benefit of a contract fully performed by the corporation, he will not be heard to object that the contract and performance were not within the legitimate powers of the corporation." Heims Brewing Company v. Flannery, 137 Ill. 309; Bradley v. Ballard, 55 Ill. 413. Moreover, the State is the only party which can be heard to say appellee has exceeded its powers by acquiring real estate beyond its need or for other than corporate purposes. Hough v. Cook County Land Co., 73 Ill. 23; Alexander v. Tolleston Club, 110 Ill. 65; Barnes v. Suddard, 117 Ill. 237.

Appellant urges this contract is invalid because appellee was not in being at its date. The date of the instrument may be assumed to be the time when it was executed and delivered and became binding where nothing to the contrary appears, but such date is not conclusive upon that subject. Appellee offered the contract in evidence. The contract therefore came into its possession at some time after its organization was completed, so that it could do business and enter into contracts. No matter when it was dated and signed by appellant, it could not have been delivered to appellee till appellee's organization was complete. As the contract was signed by appellant alone it was in the nature of a proposition to the corporation, and could become a binding contract by appellee accepting it, and either signing it or performing the contract on its part. Richelieu Hotel Co. v. International Military Encampment Co., 140 Ill. 248; Whitney v. Wyman, 101 U. S. 392; Stanton v. New York & E. Ry. Co., 59 Conn. 272; Bettelle v. Northwestern Cement Co., 37 Minn. 89. Appellee did not sign the contract but acquired title to the realty described therein, subdivided it, caused a lot to be designated in writing for appellant, and executed and delivered to him a deed therefor, all in compliance with the contract, and sued him for the purchase price. This sufficiently shows that after appellee became a corporation the contract was delivered to it, and accepted and performed by it.

It is said the contract is void for want of a sufficient

description of the property agreed to be sold. The quarter-section, township, range and meridian are specifically described. The instrument shows that the corporation when it became incorporated was to make a subdivision of a part of said quarter-section, to be known as the "Fair Ground Subdivision;" that a plat thereof had already been prepared and was in the custody of John B. Samuels, trustee. Appellant was to have a lot in said subdivision so already platted. A majority of the persons, comprising the citizens' committee on fair ground, was to designate appellant's lot out of said subdivision, and all the lots in said subdivision were of equal value. Appellant was to have some one of the lots so platted. The contract did not give the number of his lot, but that is certain which can be made certain, and the contract designated the agency to be used in selecting the lot. We think the contract was not void for want of a sufficient description of the property.

As all the lots were of equal value the transaction is not shown to be a lottery. The real substance of the transaction probably was a subscription to appellee for its corporate purposes.

The promise was to pay John B. Samuels, trustee. The record does not disclose why suit was brought in the name of appellee. One hundred dollars was to be paid in cash on the delivery of the deed, and the balance in monthly payments of $25 each, with interest at six per cent per annum, evidenced by six promissory notes, payable to John B. Samuels, trustee, and secured by mortgage on said lot. The evidence does not show that appellant refused to execute these notes and give this mortgage, and therefore does not show why more than $100 should have been recovered in this suit. Appellee recovered all the payments and $22.51 interest on the purchase price. Interest would not begin to run thereon till the deed was tendered, and the date when the deed was tendered and delivered is not in evidence, so that the proof does not show any basis for computing interest before the suit was begun. The suit was commenced August 1, 1896, and judgment rendered November 4, 1896, so that no

such amount of interest accrued after the suit was brought. But as these apparent errors were not argued they are waived. The judgment of the court below was not erroneous in the respects suggested in argument, and it is therefore affirmed.