**Louis K. Liggett Company, Appellee, v. Maurice Strum et al., Appellants.**

**Gen. No. 8,165.**

Opinion filed February 8, 1928.

JOHNSON & PEFFERLE, for appellants.

BROWN, HAY & STEPHENS, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

The appellee, Louis K. Liggett Company, filed a bill in equity against the appellants, Maurice Strum and Nathan Strum, copartners, etc., and H. R. Dean, to restrain the appellants from operating a pop-corn making machine in front of the premises occupied by the appellee, to remove the machine from the premises, and to restore said premises to the same condition in which they were prior to the boarding up of a certain stairway upon which the machine referred to was located. The bill avers that on the 8th day of November, 1920, the appellee by a certain indenture leased to the appellants Maurice Strum and Nathan Strum, as copartners doing business under the firm name and style of Strum Brothers, a certain portion of the premises, namely, that portion of the basement shown within the red lines on a certain blue-print plan annexed to the lease, also the show window facing Fifth Street, to be constructed by the lessee at the lessee's expense, said basement space to be occupied only for the storage and sale of shoes at retail, and the show window to be used for the display of shoes only. The premises in question are situated on the southwest corner of Monroe and Fifth Street in the city of Springfield, and consist of a three-story brick building. It is averred in the bill that the first floor of the building is occupied by appellee for a retail drug store; that the second and third floors of the building were leased by the appellee to various persons for offices and for living and housekeeping rooms; that there is a basement to said building, a portion of which was leased to the appellants, Strum Brothers, as heretofore mentioned; that on the east side of the building, a two-way stairway, 4 feet

in width, leads from the sidewalk down to the basement leased to the appellants. One of these stairways leads south from the sidewalk to the basement, and the other stairway leads north from the sidewalk to the basement. It is further averred that on or about the 12th day of December, 1926, Maurice Strum and Nathan Strum attempted to lease and grant to the appellant H. R. Dean permission to operate a certain piece of machinery, commonly known as a pop-corn vending machine over the stairway leading from the sidewalk to the basement from the south; that the appellants Maurice Strum and Nathan Strum and H. R. Dean caused the stairway mentioned to be closed up by boards or planks, and caused the pop-corn vending machine to be placed on the boards covering said stairway on or about the date mentioned, and that thereupon the appellant H. R. Dean operated said machinery in and upon the place described, and continues to operate the same; that the pop-corn vending machine is a mechanical device consisting of motors and heaters, equipped with various revolving pistons and wheels used in the manufacture of pop corn; that it is extremely noisy and emits offensive smells and noisome odors, which noises, smells and odors are extremely annoying to persons in and about and in the vicinity of the premises in question; that the appellant Dean also keeps a stock of candies and confections and has been engaged since the date mentioned in selling pop corn, candies and confections at the place mentioned. The bill also avers that the lease between the appellee and Maurice and Nathan Strum referred to contains the following covenants:

(A) "PROVIDED ALWAYS, and the lessee hereby covenants as follows: (h) not to assign, mortgage nor pledge this lease nor under-let the whole or any part of the premises without the lessors written consent * * *; (j) not to suffer any act to be done or omitted on the premises which will increase the rate of

insurance thereon * * *; (n) not to place any safes or heavy weights in the premises without Lessors written consent.''

(B) ''It is understood and agreed that the Lessee will keep the sidewalk in front of the demised premises free from ice, snow and other obstructions during the term of this lease.''

(C) ''In addition to any other remedies which the Lessor may have the Lessor may apply for and obtain an injunction to enforce the Lessors rights or any of them.''

It also avers that the closing up of the stairway and the operation and maintenance of the pop-corn vending machine is a violation of the provisions of the lease referred to, and has been and is productive of great injury and damage to the appellee, and that the appellee has not consented to, nor acquiesced in, the acts of the appellant, or any or either of them. It is also averred in the bill that the pop-corn vending machine as maintained and operated constitutes a public nuisance; that the subtenants of the complainant occupying portions of the building on the premises in question, and other persons coming upon said premises, in the vicinity thereof, have been and continue to be annoyed and molested by the noises, smells and other noisome features incident to the maintenance and operation of the machine referred to, whereby and in consequence of which their peace has been and is greatly disturbed.

When the issues were made up, the case was referred to the master, who heard the evidence and reported the same to the court, and thereupon the cause came to a hearing upon the evidence which had been taken by the master. The court thereupon entered a decree for an injunction requiring the appellants to remove the pop-corn vending machine from the premises in question, and that the appellants Maurice Strum and Nathan Strum restore the premises to the same

condition they were in prior to the boarding up of the stairway and the placing of the pop-corn vending machine thereon. The appeal is prosecuted from this decree.

The record discloses that the evidence taken by the master clearly supports the allegations in the bill of complaint. Robert T. Wallace, a witness for appellee, testified that he was the manager of appellee's drug store at Springfield and their business in the building referred to, since June 20, 1926; that the building is a three-story building with a basement underneath; that the appellee occupied the first floor and a part of the basement, and that Strum Brothers occupied the balance of the basement space; that prior to December, 1926, there were two stairways and the railing on both of them led down to the basement entrance on the east side of the building, on Fifth Street, but that on the 12th of December, 1926, the railing on the south side was taken down and the stairway boarded up, and shortly thereafter a pop-corn machine was placed thereon; that the machine was completely enclosed and about 8 feet high; that boards were put over the stairway about a week before the machine was put there. The machine was placed there on or about December 12, 1926, and when he, Robert T. Wallace, got down to work that day, the machine was placed in position. And the witness further testified as follows: "Right after the machine had been placed up the fire department had them move it a little bit so as not to interfere with the fire escape. They did not start to operate the machine until the next day. It has operated ever since. The stairway is still boarded up. There is a fire in the pop-corn machine. Since the machine has been placed where it is we find an odor coming from it. Our only ventilation is a small window on the east side of the building near the top and the odor comes right in and we can smell it during the day. We can smell this every afternoon when he is

popping corn. The patrons of the store often inquire what the odor is. The people on the 2nd and 3rd floors said they didn't like the smell. There are several tenants occupying the second and third floors. These people are all tenants of the Liggett Company. When I noticed the south half of the stairway was being boarded up I told Maurice that as manager of the Liggett Company I wanted to know why they were boarding it up and he would have to ask the Liggett Company about it and that he should wait until I heard from them. He told me he would be financially benefited to the extent of $50 a month by putting that over the south stairway and I asked him not to do it until they had heard from the Liggett Company as to whether they wanted it to be placed there or not. I did say that the odors from the pop-corn wagon were offensive. In our store the air is not the best in the world. We have just one entrance and just one little window and a lot of odors coming in cause comment. * * * I have not consented as manager to the closing up of the stairway. The company did not have any knowledge. * * * This stairway is on the outside of the building. It is still open from the north and you can still go down to the basement from the north side. The only connection between the pop-corn machine and the building is the light wire where they got the electricity.'' The appellant Maurice Strum, who was a witness, testified on cross-examination: ''We did close up the south side of the stairway. No one can use it to get in or out of. Mr. Dean did not pay me any money but he did pay my dad. I believe he has paid him $25 all told. We also furnish electricity, which is included in that amount. * * * I did not ask for permission from the Liggett Company to put this pop-corn wagon there. * * * There is only one door way leading into the store and both north and south stairs stop in front of that door.'' The appellant R. H. Dean testified: ''I run a pop-corn stand at

5th and Monroe Street on the east side of the Liggett store on Fifth Street. * * * I put the wagon there about the 13th of December. * * * I use gasoline to operate the wagon. I got a 10 gallon can there now.'' This witness, on being recalled for appellee in rebuttal, also testified as follows: ''I pay a little for the privileges. I pay anywhere from $15 to $25. I paid $25 last month. * * * I use gasoline for fuel to operate the machine. I keep that gasoline down in the basement under the stairway in the Strum Bros. part there. I got a ten gallon can there now. I kept it there since I began operating. I keep the can full of gasoline.'' Elward Alexander, who was called as a witness for appellee, testified as follows: ''I work in the Liggett's Drug Store as a clerk. I have worked there a year the 16th of January 1926. This is the same Liggett Drug Store in Springfield, Illinois, of which Mr. Wallace * * * is manager. I didn't hear any conversation or anything said by Maurice Strum to anyone at the time of the boarding up of the stairway. About Monday morning around the store Maurice Strum said that he was going to get $50 a month from the renting this stairway and therefore it would help him pay his $150.00 rent. * * * Maurice Strum further said that after the pop-corn machine had been put in the place that it was going to stay there and he would like to see anyone get it out from there.''

From the testimony of the witnesses above quoted, it appears that the appellants Maurice Strum and Nathan Strum, who are the lessees of the appellee of the part of the basement of the building in question for the storage and sale of shoes at retail, underlet one of the two stairway leading to the entrance of their basement store, and which was designed to be used for the purposes of ingress and egress to or from their place of business, to the appellant H. R. Dean for a valuable consideration, and to be occupied by

Dean in placing thereon a pop-corn machine wagon for the manufacture and sale of pop corn; that the pop-corn machine is a mechanical device in the wagon operated by the use of gasoline, and in conducting this business the appellant Dean kept gasoline stored in 10-gallon quantities in a can upon the premises; that the manufacture of the pop-corn resulted in the creation of unwholesome or noisome odors which permeated the place of business of the appellee, and annoyed the appellee's employees and its customers as well as the tenants of the appellee residing in the building; that the underletting in question by the appellants Maurice and Nathan Strum was in violation of the covenants of their lease, by which they had agreed not to underlet any part of the premises without the appellee's written consent, and that the storing of gasoline upon the premises was a violation of another covenant of their lease by which they agreed not to suffer any act to be done or omitted on the premises which would increase the rate of insurance thereof. It is a matter of common knowledge that the storing of an inflammable and explosive substance like gasoline in the quantity shown by the evidence would necessarily result in an increase of the insurance rates. The right to an injunction for violation of the negative covenants of a lease is well settled. *Van Sant v. Rose,* 260 Ill. 401; *Andrews v. Kingsbury,* 212 Ill. 97; *Hursen v. Gavin,* 162 Ill. 377; *Consolidated Coal Co. of St. Louis v. Schmisseur,* 135 Ill. 371.

In the case of *Star Brewing Co. v. Primas,* 163 Ill. 652, the court said: "Equity will interpose by injunction to prevent the breach of an express negative covenant annexed to leases or deeds. The prohibition of their breach is indirectly an enforcement of their specific performance. Equity will interfere by injunction to prevent the breach of an express negative covenant, even though no substantial injury is caused by such breach. It will also so interfere, even though the

damages, if any, may be recoverable at law. The reason is, that the owner of land selling or leasing it may insist upon just such covenants as he pleases touching the use and mode of enjoyment of the land. He has a right to define the injury for himself, and the party contracting with him must abide by the definition. (*Stewart v. Winters,* 4 Sandf. Ch. 587; 2 High on Injunctions 3d Ed. Secs. 1142, 1158; *Consolidated Coal Co. of St. Louis v. Schmisseur,* 135 Ill. 371.)'' Furthermore, the appellants expressly agreed in one of the covenants of their lease that in addition to any other remedies which the appellee might have, it might apply for and obtain an injunction to enforce its rights under the lease or any of them. It is however contended by the appellants that the stairway in question was not a part of the premises leased to the appellants Maurice and Nathan Strum. There is no merit in this contention. It clearly appears that the stairway was the means of ingress and egress to their place of business which they occupied under the lease, and was essential to the proper use and enjoyment of the premises leased by the appellants for their business, and that it was contemplated by the parties at the time of the lease that both stairways were to be used for that purpose. By implication the stairways were therefore a part of the premises leased. *Alexander v. Tolleston Club of Chicago,* 110 Ill. 65; *Patterson v. Graham,* 140 Ill. 531; *Vinissky v. Lazovsky,* 155 Ill. App. 596; Thompson on Real Property Vol. 2 Sec. 1107. In *Alexander v. Tolleston Club, supra,* the rule involved is pointedly referred to: ''It is the rule that whenever a thing is granted, all and every easement necessary to its beneficial enjoyment will pass.'' Moreover, the appellants Maurice and Nathan Strum treated and used the stairways in question as a part of the premises leased from the appellee by subletting one of them to the appellant Dean, and are therefore estopped to deny that the stairways were not included

272

in nor a part of the leasing, and not involved in the covenants of the lease.

For the reasons stated, the decree granting the injunction is affirmed.

*Decree affirmed.*