Arnold v. Conklin.

---

**John W. Arnold and Thomas F. Ryan v. E. R. Conklin, The Northwestern Telephone Co., E. H. Harrison, L. S. Harrison, Curtis M. Harrison, Fred W. Keeley, W. H. Sohn, W. J. Harper, G. W. Hartman, Charles F. Stotzer, Frank B. Reynolds, Jesse Knibloe and Lewis W. Shaw.**

| 96 | 373 |
|----|----|
| d100 ¹ | 63 |
| 96 | 373 |
| r199s | 201 |

1. PARTNERSHIPS—*When Promoters of Corporations Are Not.*—The mere joining of persons in an attempt to create a corporation or to obtain an ordinance or statute authorizing the organization of a corporation, does not, nor does the mere uniting in subscription for stock, or endeavoring to interest capitalists in an enterprise, make the parties so doing, commonly known as promoters, partners.

2. SAME—*Can Be Created Only by Mutual Agreement.*—A partnership, as between the parties composing it, can be created only by the mutual agreement of such parties.

3. SAME—*Burden of Proving the Partnership by Parties Having the Means To Do So.*—In a proceeding to dissolve a partnership and to wind

up its business, partners, having the means to prove their relations to it, will be held to strict proof.

4. SAME—*Agreements to Form Do Not Create Partnerships.*—A mere agreement to form a partnership does not create one, but a definite understanding and arrangement between parties to mutually unite for the prosecution of a joint undertaking and share the profits of it equally, may do so.

**Bill for an Accounting.**—Appeal from the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the April term, 1901. Reversed and remanded with directions. Opinion filed July 12, 1901.

**Statement.**—Some time in the year 1895 or 1896 Edward R. Conklin, one of the appellees, came to Lockport, Illinois, and there ran a boarding house. The appellants in this case were then old residents of Lockport, having lived there from thirty to forty years, and were well acquainted with the representative men of Lockport and the city of Joliet. They were also substantial business men, one of whom had occupied important public positions. Mr. Conklin endeavored to interest appellants in an attempt to procure from the city of Joliet the right to install and operate therein a telephone system, and the three engaged in such an enterprize, each devoting some time thereto in the way of endeavoring to induce others to join in such enterprise, and also making the mayor and aldermen of the city of Joliet acquainted with their desires and endeavoring to persuade them that the introduction of such telephone system, and the granting of an ordinance therefor, would be beneficial to the city of Joliet.

As a consequence of this, about the 25th of July, 1898, a petition was introduced into the city council of the city of Joliet, signed by appellants and Conklin, asking the grant of such an ordinance to them individually. On the 23d of August, 1898, the city council refused such request. The matter was thereafter talked over between appellants and Conklin with the result that it was decided to pursue the enterprise, prepare another ordinance to meet the objection which had been raised to the first, and endeavor to obtain the passage of the amended proposed ordinance.

Arnold v. Conklin.

It had been theretofore agreed between appellants and Conklin that they should be joint and equal owners in whatever ordinance might be obtained and share equally in the profits arising therefrom. Some time in September, 1898, Conklin presented a written agreement to appellants for their signature. The terms thereof were not satisfactory to either of appellants and they declined to sign it, but the matter of endeavoring to procure an ordinance still went on, and on December, 1898, Conklin, for the purpose of defraying expenses in the joint enterprise, received from appellants two drafts, each for the sum of $50, on which he obtained $100. In the latter part of the summer or early fall of the year 1898 Conklin went to Ohio and appears to have there had interviews with various parties whom he endeavored to interest in the enterprise. After Conklin returned from Ohio an ordinance was prepared, as had been previously agreed upon, asking the city council of Joliet to grant an ordinance permitting the construction and operation of a telephone exchange in the city of Joliet to the Northwestern Telephone Company, it having been concluded by appellants and Conklin that the city council would more readily grant an ordinance to a corporation than to individuals. This ordinance, signed "Northwestern Telephone Company, per E. R. Conklin," was presented to the city council of the city of Joliet on the 6th day of March, 1899, and by it held under consideration until the 22d day of June, upon which day the ordinance was passed by the council and approved by the mayor on the 26th day of June. Upon the day succeeding the approval of this ordinance, Arnold and Ryan, professing to act as a majority of the partners, filed their acceptance with the city council, of this ordinance, together with the bond required thereby. Conklin was, as they understood at this time, in Ohio.

July 10th, the following acceptance of such ordinance was filed:

" STATE OF ILLINOIS, ⎞
   Will County, ⎟
   City of Joliet. ⎠
We, the undersigned, Eugene H. Harrison, L. S. Harri-

son, Curt. M. Harrison, Fred W. Keeley, W. H. Sohn, W. J. Harper, G. W. Hartman, Charles F. Stotzer, F. B. Reynolds, Lewis W. Shaw, Jesse Knibloe and Edward R. Conklin, being all the partners in the copartnership known and heretofore existing, known as the Northwestern Telephone Co., to which said copartnership the said city of Joliet heretofore, on the 19th day of June, and by the approval of the said mayor of Joliet, June 26, 1899, granted permission to install, construct and place within the said city of Joliet a telephone system, now here and by these presents accept the said ordinance adopted and passed by the said city council of Joliet and its provisions as an entirety, as witness our hands and seals this 7th day of July, A. D. 1899."

(Here follows the signature of all the appellees, save the Northwestern Telephone Company, a corporation.)

And on the same day the parties so accepting filed a bond in accordance with the provisions of the ordinance. On the 7th day of July, a preliminary certificate of the organization of a corporation called the Northwestern Telephone Company was filed in the office of the Secretary of State, and the organization was completed, its final certificate issuing July 22, 1899, which was recorded in the office of the recorder of Will county on July 24, 1899. Immediately after the preliminary certificate was filed with the Secretary of State for the organization of the Northwestern Telephone Company, Conklin commenced canvassing in the city of Joliet for subscribers for telephones. On the 16th of July, appellants published a notice in a newspaper of said city to the people of Joliet, that Conklin had no authority to do so. On the 5th of September, 1899, Conklin and his associates, by deed duly recorded, transferred to the Northwestern Telephone Company, a corporation, all their interest in the Northwestern Telephone Company. On the 16th of April, 1900, the Northwestern Telephone Company, by its secretary, Conklin, presented to the city council of Joliet proofs that they had obtained valid subscriptions for 500 telephones in said city; and also presented a bond as required by the ordinance, which bond was approved. On the 17th of May, 1900, a permit was granted to the company, to make use of streets in accord-

ance with the terms of the ordinance, and an additional bond, as required by the ordinance, was filed. The company proceeded at once to open streets and to lay therein underground conduits as well as to erect poles. On the 22d of June, appellants filed the bill in this case.

EDDY, HALEY & MUNROE, attorneys for appellants.

GARNSEY & KNOX, attorneys for appellees.

MR. JUSTICE WATERMAN delivered the opinion of the court.

The bill in this case proceeds upon the theory that appellants and Conklin, by mutual agreement, became and were partners in the enterprise of procuring an ordinance permitting the establishment of a telephone exchange in the city of Joliet; that they were to be mutual and equal owners of such ordinance as might be obtained, and to share equally in whatever profits might arise therefrom. It is urged by appellees that Arnold, Ryan and Conklin were but promoters, and that mere promoters are not partners. In support of this contention, various authorities are cited, among them Lindley on Partnership, star paging 21, 22 and 23. It is doubtless the case that the mere joining of persons in an attempt to create a corporation, or to obtain an ordinance or statute authorizing the organization of a corporation, does not, nor does the mere uniting in subscriptions for stock, or endeavoring to interest capitalists in an enterprise make the parties so doing, commonly known as promoters, partners. A partnership, that is, among the parties to it, can be created only by mutual agreement, and by mutual agreement there are very few, if any, lawful business undertakings in respect to which a partnership might not be created.

The question presented here as to the relation sustained by Arnold, Ryan and Conklin to each other, is not so much what they were undertaking to do, as what the agreement between them was. As to this, Ryan and Arnold testified that it was agreed among them that they should be partners, and should share equally in the ownership and profits arising therefrom, of whatever ordinance might be granted.

True it is, that no agreement had been reduced to writing, and that, as it was contemplated that other persons should be taken into the enterprise, there was not any definite understanding as to what share in the undertaking should be retained for the promoters and what should be turned over to capitalists who might be induced to furnish the necessary money. Nevertheless, the testimony of Arnold and Ryan established the creation of a partnership between themselves and Conklin. Whether it was a partnership to the extent that either was constituted an agent to create obligations and incur liabilities binding upon the others, it was, at least, an agreement that, as between themselves, the three should unite in the prosecution of the enterprise they undertook, and should share equally in the profits arising therefrom. It may be that, strictly speaking, the agreement between them is the more correctly defined as an equal part ownership than a partnership, but it was an undertaking and agreement that all should contribute to the proposed end, and that what was obtained, or what was gained by the united efforts of all or the single effort of any should be divided equally among the three.

It is therefore immaterial that Conklin, after going to Ohio and consulting with other parties, presented a written agreement to appellants, to which they did not assent. Such refusal to agree to an extension or enlargement of the understanding between the three did not terminate the previous arrangement made by them nor release Conklin from his obligation to appellants; nor does such refusal seem to have been so considered by Conklin, as in December thereafter he obtained from appellants two drafts, each for the sum of $50, upon which he obtained money to enable him to prosecute the joint undertaking.

We see, therefore, no reason why Conklin is not bound to account to appellants for whatever profit he, Conklin, made as a result of the mutual undertaking, joint effort and expenditures. Conklin having succeeded in interesting a number of other persons, they, with him, proceeded to act without any reference to appellants, and, so acting, the city of Joliet has recognized them as the parties to whom

the ordinance, approved June 26, 1899, was given, and they, in pursuance of such recognition, have expended large sums of money and established a telephonic exchange in accordance with the terms of the ordinance. It does not appear that at the time of the granting of the ordinance to the Northwestern Telephone Company there was any such telephone company in existence. The application for such ordinance and the acceptance of the same was a violation of the laws of this State, and the city of Joliet might have refused to recognize the ordinance as having any validity, because granted to a supposed corporation, which had then no existence. The city did not see fit to do so. The corporation was thereafter created, and is now operating under said ordinance. It does not appear that any of the capitalists had either knowledge or notice at the time the Northwestern Telephone Company was incorporated, said ordinance was accepted, or at any time up to the period when the bill in this case was filed, of any of the rights or claims of appellants. All the appellees, save Conklin, seem to have engaged in the enterprise, expended their money in good faith, and not to be bound to or under any obligation to account to appellants, or either of them, for anything whatever.

It is urged by appellees that if appellants have any remedy it is in a court of law, and not in equity. As we are of the opinion that appellants have no equitable claim upon any of appellees save Conklin, it is unnecessary to consider this position, save as to Conklin. Conklin, in his answer, (he did not testify in the case,) denies that there was any partnership whatever. He does not put his defense upon the ground that appellants' bill does not make or state a cause cognizable in a court of equity, but only in a court of law. True it is, that partners having the means to prove their own partnership will be held to strict proof. 17 American & English Ency. of Law, pp. 1312 and 1314. But we regard the partnership between appellants and Conklin as established by the testimony of the former, while Conklin is, for reasons best known to himself, discreetly silent.

It is also true, as is urged by the appellees, that a mere agreement to form a partnership does not create a partnership, but the agreement between appellants and Conklin went much further than this. It was a definite understanding and arrangement that they would mutually unite for the prosecution of the joint undertaking, and would equally share the profits thereof.

The decree of the Circuit Court dismissing the bill for want of equity is affirmed as to all of appellees, save Edward R. Conklin, and the decree as to Edward R. Conklin is reversed and the cause remanded with directions to the court below to require him to account in accordance with the prayer of the bill.

The costs of this appeal will be taxed against Edward R. Conklin.

Reversed and remanded with directions.