## Chicago Telephone Co. v. Northwestern Telephoue Co.

1. PRESUMPTIONS—*As to the Regularity of the Passage of Ordinances.*—When neither statute nor ordinance requires that the journal of the proceedings of a city council show affirmatively that an ordinance was read at the time of its presentation for passage, when it appears regular in other respects it will be presumed that it was read when presented.

2. ORDINANCES—*When Considered as Licenses and Binding Contracts.*—An ordinance granting to an incorporated company the right to construct and operate a telephone system in the city, is a license, and becomes a binding contract between the city and such company when it accepts the privilege conferred by the ordinance and enters upon the use of the streets for the purposes specified in such ordinance.

3. SAME—*Granting Franchises, When Not Void.*—An ordinance granting the right to construct and operate a system of telephones in the city is not void for the reason that at the time the ordinance granting such privilege was presented for passage only the application for the company's incorporation had been filed with the secretary of state but the certificate of its complete organization had been issued and filed with the recorder, before the ordinance was passed and its terms accepted by the company.

4. SAME—*Requiring Permits from Certain Committees—Who May Object.*—When an ordinance granting the right to construct a system of telephones in the streets of a city requires the company to obtain a permit in writing from the committee on streets and alleys before proceeding to construct its system, the fact that such company omits to obtain such permit is a matter which concerns only the city, and it alone can take advantage of its failure.

5. FRANCHISES—*Grants of, by Ordinances, Not to be Exclusive.*—A city has no power to grant the exclusive use of the streets to persons or corporations for private purposes but must hold and control possession of the same exclusively for the public use.

6. MUNICIPAL CORPORATIONS—*No Right to Grant the Exclusive Right to Use the Streets to Corporations.*—Municipalities have no power to grant to one company or person the exclusive right to erect and maintain a system of telephones in the public streets, but such a grant must be subject to such limitations as will enable other companies or persons to obtain and enjoy like franchises so that there is no unreasonable or unnecessary invasion of the rights of a former occupant.

**Bill for an Injunction.**—Appeal from the Circuit Court of Kane County; the Hon. GEORGE W. BROWN. Judge, presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed January 24, 1902.

**Statement of the Case.**—This was a bill for injunction filed by appellant in the Circuit Court of Kane County to restrain appellee from constructing its telephone lines in the city of Aurora in the manner proposed by it, upon the ground that such construction will interfere with the telephone system of appellant in said city.

The bill alleges that by an ordinance known as No. 45, passed by the city council of the city of Aurora, September 6, 1881, appellant obtained the right to erect and maintain the necessary poles, wires and equipment to operate and use a system of telephones in said city; that it accepted the terms and conditions of said ordinance and complied therewith in all respects and thereby became vested with certain rights and privileges in the streets, alleys and public grounds of said city; that it established an exchange and telephone system, expending therefor many thousands of dollars, and has kept and maintained the same for more than eighteen years; that the said ordinance granting it the right to establish said telephone system, contains the express provision that any future grants to any other telephone company or individuals, should not interfere with the rights thereby granted to appellant; that appellee, in violation of appellant's prior and vested rights, is without warrant or authority of law, digging and tearing up the streets of said city and placing poles, wires, cross-arms and equipments in said streets in such manner as to permanently endanger the property of appellant, interfere with the successful operation of its system of telephones and impair the property rights and prior vested interests of appellant; that appellee claims the right to interfere with the rights and property of appellant by virtue of an ordinance of the city of Aurora known as No. 630, presented to the city council July 17, 1899, but that said ordinance is absolutely void and confers no rights upon appellee; that at the time said ordinance was presented to said city council appellee was not an organized corporation, had no legal existence and no power to receive the rights purported to be conveyed to it by said alleged ordinance. The bill further sets out the

manner in which it is claimed appellant's rights will be interfered with by the construction of appellee's telephone system and prays for a temporary injunction, restraining and enjoining appellee "from in any manner interfering with the poles, wires and telephone system of complainant and from overbuilding the same and from paralleling complainant's lines on the same side of the street with wires placed on poles on the same side of the street with the poles of complainant and from placing distributing wires or other wires thereon above the wires of complainant, either paralleling or crossing the same, and from obstructing the streets, avenues and alleys of the city of Aurora, Kane county, Illinois, with poles, wires and equipments, and that upon a final hearing said injunction may be made permanent." A temporary injunction was issued in accordance with the prayer of the bill July 31, 1900, and five days later, on a motion to dissolve the injunction, an order was entered modifying the same so as to permit appellee to proceed with the construction of its telephone system in such manner as not to interfere with the practical operation of the telephone system of appellant in said city. Appellee answered, claiming that by virtue of said ordinance, No. 630, it had equal rights with appellant to the use and occupancy of the streets, alleys, avenues and public places in said city for the placing of its poles and wires; that both appellant and appellee enjoyed said rights and privileges to place said poles and wires in any manner which did not unnecessarily or unreasonably interfere with other poles or wires placed in said streets, alleys, avenues and public places; that appellant did not by the mere fact of having a franchise granted at an earlier date, thereby acquire any rights or privileges superior to those enjoyed by appellee; that appellee has not unnecessarily or unreasonably interfered with appellant's wires and poles; that the city council of said city, by ordinance, placed the supervision and direction of all lines of poles and wires in the committee on streets and alleys; that appellee in the construction of its telephone system proceeded in accordance with the ordinances of the

city and under and by virtue of a permit in writing from said committee on streets and alleys; denies that any dangers will result to appellant's lines by reason of the construction of appellee's system; denies that the ordinance under which appellee claims is not a valid one; alleges that appellee was a duly authorized corporation at the time of the presentation of the ordinance; denies that appellant can question the validity of the organization and corporate existence of appellee in this action; denies that appellant is entitled to the relief prayed for or for any other relief in regard to the matters set forth in the bill. A replication was filed and upon the hearing the court dissolved the temporary injunction and dismissed the bill for want of equity.

MR. ALBERT J. HOPKINS, MR. FRED A. DOLPH and MR. ROBERT BRUCE SCOTT, attorneys for appellant; HOLT, WHEELER & SIDLEY, of counsel.

MURPHY, ALSCHULER & NEWHALL, attorneys for appellee, SAMUEL ALSCHULER, of counsel.

MR. JUSTICE HIGBEE delivered the opinion of the court.

At the time ordinance No. 630, under which appellee claims the right to erect and maintain its telephone system in the city of Aurora, was presented to the city council, and at the time it was passed, there was in full force and effect an ordinance of the city reading as follows : "All ordinances, after being presented and read, shall lie over one week before final action shall be taken thereon." The record of the proceedings of the city council of July 17, 1899, the day on which the ordinance in question was presented to the council, contains the following : "Alderman Linden presented an ordinance granting a franchise to the Northwestern Telephone Company in the city of Aurora, which on his motion was laid over under the rules." Three weeks later the ordinance was taken up, read section by section and passed. Appellant insists that the record of the city council above referred to shows that the ordi-

nance was presented but not read at the first meeting; and also that the journal must show affirmatively that the ordinance was read before it was laid over, in order to give validity to its final passage.  The general ordinance requiring that all ordinances after being presented and read should lie over a week, does not require that the journal of the proceedings of the city council shall affirmatively show such facts.  The statute in reference to cities and villages, from which the city council gets its powers, provides that the council shall keep a journal of its proceedings, but it does not provide what entries shall be made except in certain instances, as in the passage of ordinances, where it requires that the yeas and nays shall be taken, " which shall be entered on the journal of its proceedings." Rev. Stat., Chap. 24, Secs. 40 and 41 (Hurd, 1899).  In the case of Supervisors of Schuyler County v. The People ex rel., etc., 25 Ill. 181, where the constitutionality of an act of the General Assembly was in question, it was said :

" It is next objected that the Senate journal does. not show that the bill was read three times in that body before it was put upon its final passage, and that hence the constitutional requirements to make it a law were not observed. The constitution does require that every bill shall be read three times in each branch of the General Assembly before it shall be passed into a law, but the constitution does not say that these several readings shall be entered on the journals.  Some acts performed in the passage of laws are required by the constitution to be entered on the journals in order to make them valid, and among these are the entries of the ayes and nays on the final passage of every bill, and we held in the case of Spangler v. Jacoby, 14 Ill. 297, that where the journal did not show this, the act never became a law.  But where the constitution is silent as to whether a particular act which is required to be performed shall be entered on the journals, it is then left to the discretion of either house to enter it or not, and the silence of the journal on the subject ought not to be held· to afford evidence that the act was not done.  In such a case we must presume it was done unless the journal affirmatively shows that it was not done."

In Wabash Railroad Co. v. Hughes, 38 Ill. 174, it is also

said upon the same subject, "Some acts must appear from the journals to have been performed, as well as the proper authentication upon the bill, before it can be regarded as a law of the land. Everything which the constitution has required to be entered upon the journals, in the progress of a bill through the two houses, is essential to its binding force, and must appear from the journals to have been performed. Other acts required to be done by the two houses but not required to be spread upon the journals, will be presumed to have been done, when a statute appears in other respects to be regular, unless the contrary appears from the journals themselves." As neither the ordinance nor the statute required that the journal must affirmatively show that the ordinance was read at the time of its presentation, it will be presumed from the authorities above cited that as the ordinance appears regular in other respects, it was read when presented. We are also of opinion that by the language of the journal which recites that the ordinance of appellee "was laid over under the rules" is meant that the ordinance was laid over in compliance with the rules.

It is also said that the ordinance was void for the reason that the corporation had no legal existence at the time the ordinance was presented to the city council, its certificate of organization not having been issued at that time. The statement for the incorporation was filed with the secretary of state July 7th. The certificate of organization was issued July 22d, and filed July 24, 1899, in the office of the recorder of Will county. The ordinance was presented to the city council July 17, 1899, which was after the application for incorporation had been filed, but before the certificate of organization had been issued by the secretary of state. The ordinance was not passed, however, until August 7, 1899, which was after the certificate of organization had been issued and recorded. Appellant insists that as the corporation had no legal existence at the time the petition was presented, it could not be contracted with and could not be the subject of a grant. There was no

grant made, however, or contract entered into until the final passage of the ordinance, at which time appellee had a legal, existence and was fully organized. The ordinance was a license which became a binding contract between the city and appellee, when the latter accepted the privileges and entered upon the use of the streets for the purposes specified in the ordinance. People v. Central Union Tel. Co., 192 Ill. 307. It was therefore the acceptance of the ordinance by appellee that made it a contract.

In the case of Lauder v. Peoria Agricultural and Trotting Society, 71 Ill. App. 475, the contract sued upon by appellee was dated March 23, 1895, while appellee's certificate of organization was dated April 24, 1895, and filed for record May 20, 1895. The point was made that the contract was void for the reason that appellee corporation was not in existence at the time of the date of the contract. This court, however, in sustaining the contract, used the following language:

"Appellant urges this contract is invalid because appellee was not in being at its date. The date of the instrument may be assumed to be the time when it was executed and delivered and became binding, where nothing to the contrary appears, but such date is not conclusive upon that subject. Appellee offered the contract in evidence. The contract, therefore, came into its possession at some time after its organization was completed, so that it could do business and enter into contracts. No matter when it was dated and signed by appellant, it could not have been delivered to appellee until appellee's organization was complete. As the contract was signed by appellant alone, it was in the nature of a proposition to the corporation, and could become a binding contract by appellee accepting it, and either signing it or performing the contract on its part." (See also Clarksburg El. L. Co. v. Clarksburg, 47 W. Va. 739, 50 L. R. A. 142; Spring Garden Bank v. Hulings Lumber Co., 32 W. Va. 357, 3 L. R. A. 583; Rotch's Wharf Co. v. Judd, 108 Mass. 224; Richelieu Hotel Co. v. Mil. Encampment Co., 140 Ill. 248.)

In the case of Arnold v. Conklin, 96 Ill. App. 373, relied upon by appellant, it is expressly said by the court that at the time of the granting of the ordinance by the city of Joliet

the corporation referred to was not in existence and that consequently the city of Joliet might have refused to recognize the ordinance as having any validity. A different condition from that exists in this case where the corporation was fully organized at the time the ordinance was passed. Notwithstanding the fact that at the time the ordinance was presented only the application for appellee's incorporation had been filed with the secretary of state, yet as the certificate of complete organization had been issued and filed with the recorder before the ordinance was passed, and as the terms of the ordinance were afterward accepted by appellee and it proceeded to construct its telephone system under the same, the grant to appellee was not void. The question whether the ordinance was so passed as to bind the city is one which can not concern appellant here. Appellee accepted the ordinance, entered upon the streets and erected its lines pursuant thereto. The city participated in this and the evidence shows that its officers laid out appellee's route and directed the manner its poles and lines should be erected at various places. It may well be doubted whether, after the work had been done, in reliance upon the ordinance and in obedience to the direction of its officers, the city even, could take advantage of any failure of its records to show that the ordinance was read before it was laid over to defeat the contract. Certainly no one but the city should afterward be heard to question it. The case differs from that where the city council attempts to do by ordinance that which it has no power to do, as in the case of Field v. Barling, 149 Ill. 556, in which the ordinance was held invalid, in a suit between individuals. In this case there is no question as to the right of the council to pass the ordinance, and the only objection is that there were irregularities in the manner of its passage.

The ordinance relied upon by appellee provided that before opening any street, alley, avenue or other public way for the purpose of establishing its telephone system, it should obtain a permit in writing from the committee on streets and alleys to do so. It appeared from the evidence

that appellee had placed its poles on various streets and alleys which were not covered by the written permit of the committee. The work done by appellee which was not covered by its written permit, however, was done under the direction of the city electrician and the committee. Whether there was a written permit for all the locations is a matter which concerns only the city, and it alone can take advantage of the failure of appellee to observe all the conditions of the contract. After the bill in this case was filed, but before the hearing of the case, the city council passed another ordinance ratifying and re-enacting ordinance No. 630 under which appellee claims. It also passed certain resolutions approving and accepting the location of appellee's lines on certain streets, where complaint of such location had been made by appellant. Appellee did not amend its answer setting up the new ordinance and the resolutions, consequently that evidence may have been improper. There was, however, as we have above indicated, sufficient competent evidence to sustain the ordinance and the action of appellee in the locating of its lines.

In the grant to appellant by the ordinance of September 6, 1881, the common council expressly reserves the power to grant the right to other telephone companies or to individuals to establish telephone systems, provided it is done in such a manner as not to interfere with the rights granted by that ordinance to appellant. The grant to appellant was therefore not exclusive, and even if it had been so, it would to that extent have been void, as the city had no power to grant the exclusive use of the streets to corporations or persons for their own private purposes, but must hold and control possession of the same exclusively for the public use. Pennsylvania Co. v. Chicago, 181 Ill. 289.

Appellant claims that by reason of the priority of the ordinance granting it the right to establish its system in the city of Aurora, it has superior rights to the space occupied by its poles, cross-arms and wires and to the " electrical zone " surrounding them, and that those rights are property rights, which will be protected from interference and inva-

sion to the same extent as other property rights. Appellee concedes the prior right of appellant but insists that the rights granted were, not to operate a telephone system in Aurora free from any interference whatever, but free from unreasonable and unnecessary interference, or from any interference which would prevent the practical operation of appellant's telephone system. Appellant insists that to give it the relief which it is entitled to under its ordinance, appellee should be restrained from paralleling appellant's lines at the same height on the same side of the street; from over-building it in any street, alley or public place; from thrusting poles up through its leads of wires; from interlacing its wires or crossing over its wires within the zone occupied by appellant in the discharge of its telephone exchange business in Aurora. Appellant's theory is "that no part of the wiring of the two different systems should be installed in the same 'zone,' meaning by the term 'zone,' an air space so arranged that in case of breakage of any wire at any point the wire would not fall and come in contact with the wire of any other system, either by being blown against it or by falling directly on it." Upon the question of proper construction of telephone lines in general and also upon the question as to whether the construction of appellee's line, as proposed, would interfere with the practical operation of appellant's system or cause appellant unreasonable or unnecessary danger, annoyance and expense, a very large amount of testimony was taken.

The proof showed (1) that appellee had in several places pierced appellant's leads of wires with tall poles, fifty-five feet in height, intended to be used to distribute wires in all directions; (2) that appellee had in other places pierced leads of wires of appellant with poles higher than those used by appellant for the purpose of stringing wires along the same, thus overbuilding appellant with parallel lines; (3) that at other places where appellee intended to cross a street occupied by the wires of appellant, it had set poles of the same height as those used by appellant so that wires strung across the street between appellee's poles would

interlace appellant's wires; (4) that at other places where appellant occupied one side of an alley, appellee had set poles of the same height on the other side, so that distribution of wires from the side of the alley occupied by appellee, to that occupied by appellant, must be made through appellant's lines. It appeared from the proofs there was an ordinance of the city which provided that all poles should be at least thirty feet in height above the surface of the ground. Appellant, in certain instances, where it was overbuilt by appellee, used a pole only thirty feet long, five feet of which was in the ground and only twenty-five feet above the surface. It was therefore impossible for appellee in those instances to underbuild appellant, using a thirty-foot pole, without extending the same through appellant's lead of wires. The piercing of appellant's leads by poles higher than appellant's, to be used either as distributing poles or to string ordinary leads of wires, raises the question of the right of appellee to overbuild appellant's lines. Appellant concedes the right of a company, duly authorized by ordinance to construct a telephone system in the city, to underbuild, but denies its right to overbuild appellant's lines.

Appellant's position is, that as it was the first to occupy the field, it has a right to the better position and that the line which overbuilds has the better and safer position.

Without going at length into the mass of evidence upon the subject it is sufficient to say that the weight of the proof did not show that appellant would be more injured by overbuilding than by underbuilding; that it would, was a mere theory of appellant's witnesses, to which was opposed the theory of appellee's witnesses. It was shown that in some parts of the city appellant had permitted other lines to overbuild it, and in one instance at least, appellant insisted that a line which had underbuilt, should be changed so as to overbuild appellant's lines. This, too, was in the case of electric light wires carrying a high potential current. It must be borne in mind that the city owns and controls the streets, and that in disposing of franchises to persons or corporations for the use of the streets it must

constantly have in mind the general welfare and safety of the citizens. It appeared there were ten different sets of electric wires on the streets of Aurora, and it is evident that the city was and is the only proper judge as to how they should be constructed with reference to each other. There was proof tending to show that for general safety the best rule of construction required that all wires carrying a low potential current of electricity, such as telephone wires, should be on one side of the street, while those carrying a high potential current, such as electric light and power wires, should be grouped on the opposite side of the street. Appellant's ordinance permits it to have its lines and poles upon the street. It is not necessary for us to decide here whether the city may not require it hereafter to change the location of its lines or to place them upon higher or lower poles, or even to remove its poles and put its lines under ground, if more modern inventions and modes of construction make it desirable for the public good and that this should be done. But while it is permitted to occupy a given street with a given set of poles and lines thereon, we hold that it can only require that another company shall not place its wires so near its own that they will interfere with the actual operation of appellant's wires. It does not own the exclusive right to the space above or below its wires; if it did, then by putting on wider arms and putting a wire at each end thereof, it could exclude all other lines from its side of the street, and but two companies using wires for any purpose could run on the same street.

In the case of Louisville Home Telephone Co. v. Cumberland Telephone & Telegraph Co. decided in the United States Circuit Court of Appeals for the Sixth Circuit, on November 6, 1901, where there was a controversy between two telephone companies, involving questions very similar to those presented here, it was said by the court in reference to the rights of the prior company:

"It may properly be conceded that its prior occupancy of space under the franchise granted by the statute and ordinance would entitle it to the continued enjoyment thereof so long as it continued to perform its obligations, without

substantial impairment; but its right is not absolutely exclusive.    It is subject to such incidents as result from the exercise of the rights of other parties who have acquired a valid franchise of similar character.    It is implied in such grants as were here made to the first company, that the grant is subject to such limitations as will enable another company to enjoy a like franchise, and no property right is invaded by the adoption of such measures by the second company as will enable it to exercise its privilege, provided there is no unreasonable and unnecessary invasion of the operations of the first occupant.    For the property right of the first is not to a monopoly."

We sustain the power of the city of Aurora to authorize appellee, as it did, to erect its lines in certain places so as to overbuild appellant's lines and to pierce upon the same side of the street appellant's leads of lines at the center with poles, to be used for such overbuilding and for distribution.

Appellee's lines were put up before the hearing, and it appears that at the street crossings, where it is claimed appellee, by having poles of the same height as those of appellant, would necessarily cause its wires to interlace those of appellant; appellee did not interlace its wires with appellant and does not claim the right to do so.    In making such crossings its wires were inclosed in cables which crossed the street at points several feet below the wires of appellant.

In regard to interferences complained of in alleys where the poles of the two companies on the opposite sides thereof are of the same height, it appears from the evidence that proper telephone construction requires that appellee in running a drop wire from one of its poles to a subscriber on the side of the alley occupied by appellant, should run such wire down its pole to a point lower than the lowest lead of wires of appellant, and then run its drop wire beneath the lead of appellant to the house of its patron.    It further appears that this was the practice which had been adopted by appellee.

From all of which we conclude that appellant failed to establish a case entitling it to the relief prayed for in its bill.    Accordingly, the decree of the court below dissolving

the temporary injunction and dismissing appellant's bill is affirmed.

Mr. Justice BROWN, having presided at the trial of this cause in the court below, took no part in its determination in this court.